IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARC NORFLEET,

      Plaintiff,

vs.                                    Case No. 18–cv–0564–DRH

KAREN MILLER-PICKERING,
JOHNSON,
SHERRY BENTON,
BILLY ROLLA,
DANA PRUSACKI-NEWTON,
SHALENE HALE,
DEAN FLATT,
TYNEER BUTLER-WINTERS,
TEJEDA,
LISA QUALLS,
GLADYSE C. TAYLOR,
JOHN BALDWIN,
ILLINOIS DEPARTMENT OF
CORRECTIONS,
THOMAS SPILLER, and
JACQUELINE LASHBROOK

      Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

      Plaintiff Marc Norfleet, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 for events that happened at Pinckneyville Correctional Center and Stateville Correctional Center. Plaintiff requests injunctive relief, costs & fees, declaratory relief, and damages. This case is now before the Court for a

preliminary review of the Third Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Third Amended Complaint, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

2

## The Third Amended Complaint

Plaintiff originally filed this suit in the Northern District of Illinois on November 3, 2017. (Doc. 1). The original complaint was stricken for failure to conform to federal notice pleading requirements. (Doc. 7). Plaintiff filed an Amended Complaint on January 18, 2018. (Doc. 12). The Northern District then transferred the case here on March 12, 2018. (Doc. 14). Plaintiff submitted 2 proposed amended complaints in a short period of time, and the Court caused the most recent one to be filed as the Third Amended Complaint on July 10, 2018. (Doc. 26) (Doc. 27).

Plaintiff alleges that Defendants caused him to lose the case *Norfleet v. Shah*, No. 14-cv-1408-JPG-PMF ("14-1408") after Judge Gilbert issued an order requiring prison officials to show cause regarding Plaintiff's access to legal supplies in case No. 15-cv-0160-JPG-SCW ("15-160"). (Doc. 27, p. 8).

Specifically, Plaintiff alleges that Defendants IDOC, Prusacki-Newton, Spiller, Taylor, Baldwin, and Benton enforced a policy that arbitrarily deprived Plaintiff of adequate legal supplies after he became indigent. (Doc. 27, pp. 8-9). The lack of legal supplies caused Plaintiff to lose 14-1408 and the appeal of that case, *Norfleet v. Shah*, 15-2401 (7th Cir.). (Doc. 17, p. 9). Plaintiff alleges that Defendants took this retaliatory step against him after Judge Gilbert entered an order directing their subordinate employees to respond on April 13, 2016. *Id*. (15-160, Doc. 14). Plaintiff received a notice that his appeal in 15-2401 had been dismissed by the Seventh Circuit on November 18, 2015. (Doc. 27, p. 9). He

immediately requested an envelope from Prusacki-Newton, Rolla, and Spiller. (Doc. 27, pp. 9, 11). Plaintiff's request was denied pursuant to a policy of only providing 2 envelopes per month to indigent inmates promulgated by IDOC, Baldwin, Taylor, Benton, Qualls, and Spiller. *Id*. Plaintiff then crafted his own envelope, but Hale refused to mail it out on November 21, 2015, further depriving Plaintiff of access to the courts. (Doc. 27, p. 12). Hale falsely claimed that the U.S. Postal Service does not permit re-used envelopes. *Id*. Hale later contradicted herself and told Plaintiff that it was IDOC, Baldwin, Taylor, Benton, Qualls, and by extensions, Spiller and the IDOC's policy to not permit inmates to re-use envelopes. *Id*.

Plaintiff was transferred to Stateville on December 1, 2015, but he alleges that Prusacki-Newton and Spiller's refusal to give him an envelope cost him 12 out of 14 days to respond to the mandate, and effectively caused the loss of both the appeal and the case in the district court. (Doc. 27, pp. 9, 11). Plaintiff alleges that other inmates, like William Malone, were not treated in this manner. (Doc. 27, p. 9).Plaintiff was also unable to mail grievances to the ARB. *Id*. While at Stateville, Plaintiff alleges that Johnson and Tejeda denied him access to adequate legal research due to IDOC, Baldwin, Benton, and Qualls' intentional refusal to allow Stateville to have an adequate law library. (Doc. 27, p. 11).

Plaintiff alleges that IDOC, Baldwin, Benton, Spiller, and Miller-Pickering denied Plaintiff his First, Fifth, and Fourteenth Amendment rights in retaliation by taking his entire state stipend and applying it to Plaintiff's debt for legal copies

and legal postage fees since 2010. (Doc. 27, p. 10). Plaintiff alleges that they only confiscate his stipend, and not any other inmates'. *Id*. This leaves Plaintiff without funds to shop in the commissary for stationary, and he needs stationary to litigate. *Id*. Plaintiff again points to Malone as an example of an inmate treated differently than him, and alleges that Malone also owes extensive legal copy, postage, and court fees. *Id*. Plaintiff alleges that this conduct also contributed the loss of 15-2401 and 14-1408. *Id*. Hale prevented Plaintiff from paying the partial filing fee in 15-2401. *Id*.

Plaintiff alleges that IDOC, Baldwin, Taylor, Benton, and Flatt deprived Plaintiff of his First and Fourteenth Amendment rights by making the institutional grievance process unavailable to Plaintiff. (Doc. 27, p. 13). Specifically, Flatt would ignore the facts of Plaintiff's grievances so that they would be denied later by the Administrative Review Board ("ARB"). (Doc. 27, p. 14).

Plaintiff alleges that the policies of denying his grievances and depriving him of adequate legal supplies continued into 2017. (Doc. 27, p. 15).

Finally, Plaintiff alleges that IDOC, Prusacki-Newton, Spiller, Taylor, Baldwin, Benton, Qualls, Rolla, Hale, Miller-Pickering, Flatt, Tejeda, Johnson, and Butler-Winters inflicted cruel and unusual punishment on Plaintiff. (Doc. 27, p. 25). Plaintiff alleges that the Attorney General's office has never made his full medical records available to him, and that he will need those records to prove the specific dates he suffered from physical and emotional pain caused by Defendants' actions. *Id*. Plaintiff also alleges that as a direct consequence of

5

losing *Norfleet v. Shah*, Shah was permitted to continue intentionally depriving Plaintiff of medical care for his disability. *Id*.

Some of the facts at issue in this lawsuit involve public records of past lawsuits filed within this Court and the Seventh Circuit. Courts are permitted to take judicial notice of matters of public record. *General Elec. Capital Corp., v. Lease Resolution Corp*. 128 F.3d 1074, 1081 (7th Cir. 1997); *see also Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012). The facts must be both indisputable and either known within the jurisdiction of the trial court or capable of ready determination from sources of unquestioned accuracy. *Id*. Court documents are public records of which the Court can take judicial notice. *Brown v. Roal-Warner*, No. 11-cv-479-DRH, 2012 WL 591402 at *1, n. 1 (S.D. Ill. Feb. 22, 2012).

The Court has found public records that are relevant to its discussion of the Third Amended Complaint. *Norfleet v. Shah* was litigated in this district court. Plaintiff filed that case on December 22, 2014. (14-1408, Doc. 1). On June 11, 2015, the Court dismissed the Second Amended Complaint without prejudice for failure to state a claim. (14-1408, Doc. 47). The Court gave Plaintiff until September 4, 2015 to file an amended complaint. (14-1408, Doc. 50). In lieu of submitting an amended complaint, Plaintiff filed a Notice of Appeal on July 1, 2015. (14-1408, Doc. 52). The Court denied Plaintiff leave to proceed IFP on appeal because it found its order dismissing the amended complaint non-final because it contemplated submitting another amended complaint. (14-1408, Doc.

61, p. 1). Thus, the appeal was frivolous because Plaintiff appealed a non-appealable order. *Id*. The Court also found the appeal so frivolous that it justified disregarding the notice of appeal. (14-1408, Doc. 61, p. 2). The Court therefore retained jurisdiction over the case and informed Plaintiff of its intention to continue to count his time to file an amended pleading. *Id*. Plaintiff filed a Second Amended Complaint, (14-1408, Doc. 70), and although the magistrate submitted a Report and Recommendation recommending that the Second Amended Complaint also be dismissed for failure to state a claim, (14-1408, Doc. 73), Plaintiff filed a Motion for Voluntary Dismissal before the Court could act on the Report and Recommendation. (14-1408, Doc. 74). The Court dismissed 14-1408 pursuant to Plaintiff's 2 motions requesting voluntary dismissal with prejudice on September 1, 2015. (14-1408, Doc. 75).

As for Plaintiff's appeal, the Seventh Circuit denied Plaintiff's renewed motion to proceed IFP on September 30, 2015, and directed Plaintiff to submit the $505 filing fee. (15-2401, Doc. 17). Plaintiff filed a motion pursuant to Fed. R. Civ. P. 59(e) regarding his IFP status, which the appellate court denied on October 23, 2015. (15-2401, Doc. 22, Doc. 24). Plaintiff then filed another motion asking to proceed without prepaying fees or costs due to new circumstances. (15-2401, Doc. 25). The Seventh Circuit denied the request once more, noted that it had already denied Plaintiff's motion to reconsider, and warned Plaintiff that "future repetitious motions to reconsider will be rejected by the clerk of court." (15-2401, Doc. 26). The case was then dismissed for failure

to pay the required docketing fee on November 18, 2015. (15-2401, Doc. 27). Since filing this action, Plaintiff moved the appellate court once more to recall the mandate on the basis of inability to pay the fees and because of alleged interference with his access to legal supplies. (15-2401, Doc. 28). The Seventh Circuit denied the motion the same day it was filed without explanation. (15-2401, Doc. 29).

## Discussion

Based on the allegations of the Third Amended Complaint, the Court finds it convenient to divide the pro se action into 8 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. None of Plaintiff's claims survive threshold review:

> **Count 1** – Defendants IDOC, Prusacki-Newton, Spiller, Taylor, Baldwin and Benton retaliated against Plaintiff for securing a show cause order in Case No. 15-160 by enforcing a policy of providing Plaintiff with only 2 envelopes a month, causing the loss of 14-1408 and 15-2401 in violation of the First Amendment and/or Fourteenth Amendment;
>
> **Count 2** – Defendants IDOC, Baldwin, Benton, Spiller, and Miller-Pickering deprived Plaintiff of his First Amendment, Fifth Amendment, and/or Fourteenth Amendment rights when they confiscated his prison stipend to pay off his outstanding legal expenses, despite knowing that he was indigent and needed more legal supplies;
>
> **Count 3** – Defendants IDOC, Baldwin, Taylor, Benton, Qualls, Spiller, Prusacki-Newton, Rolla, Hale, Miller-Pickering, and Flatt deprived Plaintiff of his First Amendment and/or Fourteenth Amendment access to courts rights when they refused to provide him with an envelope to allow him to mail a motion to the appellate court

and/or failed to submit an initial partial filing fee to the appellate court, causing the loss of 14-1408 and 15-2401;

**Count 4** – Defendants Tejeda, Johnson, and Butler-Winters deprived Plaintiff of his First Amendment and/or Fourteenth Amendment right to access to courts when they denied Plaintiff an adequate law library, thus causing the loss of 14-1408 and 15-2401;

**Count 5** – IDOC, Baldwin, Taylor, Benton, and Flatt deprived Plaintiff of his First Amendment and/or Fourteenth Amendment rights when they refused to respond to grievances and/or condoned the refusal of others to respond to grievances, thus depriving Plaintiff of his access to the courts;

**Count 6** – IDOC, Prusacki-Newton, Spiller, Taylor, Baldwin, Benton, Qualls, Rolla, Hale, Miller-Pickering, Flatt, Tejeda, Johnson, and Butler-Williams inflicted cruel and unusual punishment on Plaintiff, in violation of the Eighth Amendment, when they caused the loss of 14-1408 and 15-2401, thus allowing Dr. Shah to continue to deprive Plaintiff of adequate medical care;

**Count 7** – Defendants discriminated against Plaintiff in violation of the Fourteenth Amendment's Equal Protection clause by singling him out for disparate treatment, in comparison to William Malone;

**Count 8** – Defendants violated Plaintiff's substantive due process rights under the Fourteenth Amendment.

As an initial matter, Plaintiff's inclusion of the Illinois Department of Corrections ("IDOC") as a defendant in all counts is improper. Plaintiff cannot maintain his suit against the Defendant Illinois Department of Corrections, because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state

Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990) (same). Therefore IDOC will be dismissed with prejudice from this case.

Plaintiff's first theory of recovery is that Defendants retaliated against him for securing a show cause order in Case 15-160 by refusing to provide him with an envelope. To succeed on a First Amendment retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff alleges that the conduct of April 13, 2015 caused Defendants to retaliate 7 months later, starting on November 18, 2015. Putting aside the question of whether an order written by Judge Gilbert could be construed as Plaintiff's protected speech; Plaintiff's allegations make it implausible that the alleged protected conduct was the motivating factor for the retaliation because it is too remote in time. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005) (one-month period between protected activity and adverse action does not "create a triable issue"). Moreover, the deprivation of a single envelope is not the kind of act that would deter a person of ordinary firmness from engaging in protected activity. Accordingly, the Court will dismiss **Count 1** with prejudice for failure to state a claim.

**Count 2** is legally frivolous. Plaintiff has alleged that his state funds have been encumbered to pay his legal expenses, leaving him without funds to buy more legal supplies. This procedure has been upheld in multiple decisions. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("The judge appropriately dismissed Owen's claim that the prison unlawfully confiscated his trust account funds to recover expenses that had been loaned to Owens."); *Gaines v. Lane*, 790 F.2d 1299, 1308 (7th Cir. 1986); *see also Eason v. Nicholas*, 847 F.Supp. 109, 113 (C.D. Ill. 1994) ("The deferred deduction of legal costs [as provided by Illinois statute] advanced by the state does not violate the Constitution."). Accordingly, **Count 2** will be dismissed with prejudice.

The gravamen of Plaintiff's Third Amended Complaint is **Counts 3 and 4**[1] – that Plaintiff was deprived of his access to the courts when defendants failed to provide him with an envelope to mail his motion to recall the mandate of the 7th Circuit, failed to leave him with sufficient funds to pay the appellate fee, and failed to provide him with an adequate law library.

The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the prisoner must show that prison officials interfered with his legal materials. *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013)

---

[1] Count 4 addresses the conduct of employees of Stateville Correctional Center, and it is debatable whether venue in this district is proper as to claims against Stateville employees. Judge Shah justified transferring this case to this district despite their presence by noting that Plaintiff had failed to state a claim against the Stateville employees, although he did not dismiss them or sever the claims. As this Court does not have the authority to overrule another district judge, it will proceed as if venue is proper.

11

(citing *Lewis v. Casey*, 518 U.S. 343, 348 (1996)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation.

To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo-Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Plaintiff has adequately identified that claim that was allegedly lost. However, a review of the docket in that case and its appeal shows beyond dispute that it was lost through no fault of the Defendants. Plaintiff's argument is basically that because he was not able to file a motion to recall the mandate of the Seventh Circuit, his appeal was never re-opened and therefore lost, thus also causing the loss of the underlying litigation. But every premise his claim relies on is wrong. Plaintiff's first point that had he been able to file a motion to recall the mandate, the Seventh Circuit would have granted it is wrong. Plaintiff's appeal

was dismissed for not paying the filing fee, which was incurred because Plaintiff was denied IFP status. Plaintiff submitted 2 motions seeking to reconsider the denial of IFP status. Not only were all of the motions denied, but Plaintiff was explicitly told by the Seventh Circuit that it would not consider any more motions on this point and would return any further motions to reconsider unfiled. Plaintiff does not allege that he actually paid the fee and dismissal was unjustified. In fact has alleged that he couldn't have paid the fee because of the confiscation of his trust funds. The only other way a litigant can proceed in an action without paying the fee is if they proceed IFP–the very issue that Plaintiff had already raised 3 times. The denial of IFP is the only possible subject of a motion to recall the mandate, and the Seventh Circuit had already told Plaintiff that they would not consider any further motions on this point, and would return such motions unfiled. Therefore, the motion Plaintiff allegedly intended to file was frivolous.

Plaintiff has also alleged that Hale contributed to the dismissal of his appeal by depriving him of funds to pay a partial filing fee, but a review of the appellate court record shows that Plaintiff was never granted leave to proceed IFP, and thus an initial partial filing fee was never assessed. Plaintiff also not alleged that he would have possessed the $505 appellate filing fee if his funds were not encumbered.[2] Additionally, for reasons explained below, Plaintiff's ability to pay the fee ultimately has little bearing on whether he has alleged a detriment.

---

[2] Plaintiff's largest expenditure during the 12 months prior to his appeal was a $400 debit to repay a loan he received from an outside party; something Hale had nothing to do with. (14-1408, Doc. 54, p. 7).

Even if Plaintiff had successfully filed a motion and convinced the Seventh Circuit that he was entitled to proceed IFP, it does not necessarily follow that the appeal would have saved the underlying suit. Plaintiff did not "lose" the underlying suit; it was dismissed pursuant to his own motions to voluntarily dismiss on September 1, 2015, more than 2 months before the mandate issued. Even if the Seventh Circuit had agreed with Plaintiff that it both 1) had the jurisdiction to consider the denial of a non-final order and 2) that the dismissal of Plaintiff's Amended Complaint without prejudice was erroneous, Plaintiff still would not have been free to take up his suit once more because the case had been dismissed with prejudice and judgment had entered. As *Gentry* noted, "[t]he right of access is at its base a right to be heard." *Gentry v. Duckworth*, 65 F.3d 555, 559 (7th Cir. 1995). Here, Plaintiff was heard until he availed himself of his right to dismiss his case. He has suffered no detriment at the hands of the Defendants, and his claims alleging otherwise must be dismissed with prejudice as frivolous.

Likewise, a refusal to respond to grievances, standing alone, states no claim. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v.*

*Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Plaintiff has argued that the failure to respond to grievances deprives him of his access to courts because he cannot bring claims unless they are exhausted. But this is not correct. Plaintiff is free to file a suit and then argue that the grievance process is unavailable to him. Unavailability is a complete defense to the exhaustion requirement. The failure to respond to grievances does not deprive Plaintiff of his chance to speak to the Court, and therefore, the failure to respond to grievances is not a detriment recognizable under the First and/or Fourteenth Amendment. Accordingly, **Count 5** will be dismissed with prejudice as legally frivolous.

**Count 6** is also legally frivolous. Plaintiff alleges that because he lost 14-1408, he was continually subjected to Dr. Shah's denial of medical care. Dr. Shah is not a named party to this action, and it is a bedrock principle of § 1983 litigation that each defendant must be personally involved in the conduct at issue. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). Defendants cannot be held liable for the actions of non-parties.

Moreover, in order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent

to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). Plaintiff has not alleged that he suffers from a serious medical need. He has not alleged that any of the named defendants knew that he suffered from a serious medical condition and acted with deliberate indifference. Plaintiff has therefore failed to state a claim for deliberate indifference, and **Count 6** will be dismissed with prejudice for failure to state a claim.

In **Count 7**, Plaintiff alleges that he has been denied equal protection as a class-of-one. The Equal Protection Clause of the Fourteenth Amendment protects individuals against arbitrary and irrational government treatment. *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). To adequately plead a class-of-one equal protection claim, a plaintiff must allege that he was intentionally treated differently from other similarly situated individuals without a rational basis for such treatment. *Id.* (citing *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601 (2008)). The treatment must be wrongful and differ from the norm or common practice in a manner that demonstrates discrimination. *McDonald v. Village of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004). A plaintiff may plead himself out of court if the complaint provides a rational basis for the treatment at issue. *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013).

Plaintiff claims that he was treated differently than a similarly situated prisoner, William Malone, when he was deprived of a single envelope and his funds encumbered in November 2015. Once again, public court records tell a

different story. Malone filed *Malone v. IDOC*, 15-cv-1304-MJR-SCW ("15-1304") on November 24, 2015. Trust fund statements submitted in connection with that case shows that during the relevant time period, Malone had no restrictions (i.e. debts for legal supplies or postage) on his account for the period April 2015 through February 2016. (15-1304, Doc. 26, Doc. 27). In contrast, the trust fund statement submitted by Plaintiff in connection with the appeal at the center of this case, 15-2401, shows that Plaintiff had $2,022.29 in restrictions on his trust found account for the period between 12/1/2014 and 6/25/2015. (14-1408, Doc. 54). Plaintiff filed another suit on November 17, 2015,[3] in which he represented to the Court that he owed IDOC $2,148.42 as of November 15, 2015. (*Norfleet v. Illinois Dept. of Corrs.*, 15-cv-1279-DGW, Doc. 2, p. 2). Moreover, Malone has filed at least 1 suit in which he has alleged that Pinckneyville employees improperly took his trust funds. *See Malone v. Hill*, 16-cv-973-MJR, Doc, 2, p. 14 ("Administration violated court order and confiscated indigent funds.").

These records show that Plaintiff and Malone were not similarly situated. Malone did not have funds encumbered during the relevant time period, and thus was free to use them to purchase legal supplies. Plaintiff, in contrast, had racked up a large debt. Malone has also contradicted Plaintiff's claim that only his funds were taken by alleging that Pinckneyville employees did confiscate his funds at a later time. For these reasons, the Court finds that Plaintiff has not adequately pleaded that other similarly situated inmates were treated differently than him for

---

[3] Interestingly, Plaintiff was able to file this suit the same week that he alleges that the defendants were acting to deprive him of access to the courts.

the purposes of stating an equal protection claim. Plaintiff has also alleged that defendants acted pursuant to a policy of providing indigent inmates 2 envelopes a month. He has not alleged that he was not given 2 envelopes. Having disbursed the envelopes required by their policy and faced with a frivolous motion that was doomed to be returned unfiled, the Court cannot say that defendants acted in an irrational manner in depriving Plaintiff of the envelope

Finally, Plaintiff has also alleged that his due process rights were violated in **Count 8**. A plaintiff may bring a substantive due process claim to address harmful and arbitrary acts by public officials, but the bar to bring such claims is a high one. *Geinosky*, 675 F.3d at 750. A plaintiff must pled facts suggesting a deprivation that "shocks the conscience." *Tun v. Whitticker*, 398 F.3d 899, 902-03 (7th Cir. 2005).

At this stage, the Court cannot say that depriving Plaintiff of a single envelope is the type of conduct that "shocks the conscience" for the purpose of stating a substantive due process claim. Nor is the prison's recoupment of expenses incurred from Plaintiff's trust fund account. Moreover, it is clear that the act was not harmful because the Seventh Circuit had already told Plaintiff that a motion seeking reconsider of the denial of IFP would not be filed, and Plaintiff had voluntarily dismissed the underlying suit. Section 1983 is a tort statute, so plaintiff must have suffered a harm to have a cognizable claim. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009); *Doe v. Welborn,* 110 F.3d 520, 523 (7th Cir. 1997).

Plaintiff's substantive due process claim fails in any event, because the Supreme Court has directed that substantive due process claims be analyzed under the specific constitutional provision most relevant to the claim, here the First and Fourteenth Amendments, in lieu of the Due Process clause. *Koutnik v. Brown*, 456 F.3d 777, 781 (7th Cir. 2006). As the Court has already analyzed Plaintiff's claims under the First and Fourteenth Amendments and found them wanting, the invocation of substantive due process cannot save him. Accordingly, **Count 8** will also be dismissed with prejudice for failure to state a claim.

## Pending Motions

Plaintiff's pending motions are denied as moot, as this case will be dismissed with prejudice for assertion of legally frivolous claims and failure to state a claim. (Doc. 21) (Doc. 22) (Doc. 24) (Doc. 25).

## Disposition

**IT IS HEREBY ORDERED** that this case will be **DISMISSED with prejudice** for asserting legally frivolous claims and otherwise failing to state a claim. Plaintiff's pending motions are **DENIED** as **MOOT**. (Doc. 21)(Doc. 22)(Doc. 24)(Doc. 25). Plaintiff is assessed a strike pursuant to 28 U.S.C. 1915(g).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If

Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED.**

Judge Herndon
2018.07.11 17:00:38 -05'00'
**United States District Judge**